UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. 3:02 CR 7 (JBA) |
| v. : | |
| WILFREDO PEREZ, JOSE ANTONIO : PEREZ, SANTIAGO FELICIANO, : FAUSTO GONZALEZ : | JANUARY 28, 2005 |

## DEFENDANT GONZALEZ'S MOTION FOR A NEW TRIAL

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, defendant Fausto Gonzalez respectfully moves this Court for a new trial. He has filed a separate motion seeking additional time within which to file a supporting memorandum; the Government agrees Mr. Gonzalez may be given additional time to file the memorandum. In support of this motion, counsel state:

1.  On February 4, 2003, Mr. Gonzalez was charged in four counts of a six count Second Superseding Indictment (the Indictment) with: conspiring to commit murder for hire, resulting in death, in violation of 18 United States Code Section 1958 (Count One); traveling interstate, causing and aiding and abetting others to travel interstate with intent to commit murder for hire, resulting in death, in violation of 18 United States Code Sections 2 and 1958 (Count Two); murdering, causing and aiding and abetting others to commit murder for hire in furtherance of a racketeering enterprise, resulting in death, in violation of Connecticut General Statutes Sections 53a-54a, 53a-8 and 18 United States Code Section 1958 (Count Four); and using and carrying a firearm during and in relation to a crime of violence, i.e. murder, resulting in death, in violation

**ORAL ARGUMENT IS REQUESTED**
**TESTIMONY IS NOT REQUIRED**

of 18 United States Code Sections 2, 924(c) and 924(j)(1) (Count Five).

2.  On September 9, 2004, Count Four of the Indictment was dismissed on the Government's motion.

3.  On October 15, 2004, the jury returned a verdict of guilty on Counts One, Two and Five of the Indictment.

4.  On October 26, 2004, the jury returned a sentence of life imprisonment without the possibility of release on all three counts.

5.  The Government introduced no physical, forensic, scientific, or documentary evidence which linked Mr. Gonzalez to the charged offenses.

6.  Mr. Gonzalez challenged the Government's case through cross-examination of the Government's chief witnesses, which established: (1) fundamental inconsistencies between prior statements regarding the pertinent events and observations and testimony at trial; (2) significant inconsistencies between the testimony of critical witnesses, in part, by demonstrating the implausibility of critical observations testified to by Government witnesses; and (3) the enormous incentives these witnesses had to testify falsely in order to protect themselves and receive the benefit of their cooperation agreements.

7.  There was substantial eyewitness testimony contradicting cooperating witness testimony regarding the murder.

8.  Additionally, the DEA case agent, Christopher Matta, committed perjury at a related court hearing in Miami, Florida, and at Mr. Gonzalez's trial. At the removal hearing of a co conspirator Raymond Pina, Agent Matta falsely testified that he had never discussed with Ollie Berrios what Berrios was hoping to receive in exchange for

cooperating with the Government, and that he never told Berrios what Berrios might get in exchange for the cooperation. However, tape recorded conversations between Agent Matta and Berrios made prior to that removal hearing conclusively established that the two had discussed cooperation extensively, including what specific benefits Berrios sought to secure in exchange for his cooperation, and what Berrios might get from the Government. Significantly, AUSA David Ring accompanied Agent Matta to the removal hearing, was aware of the prior conversations and untruthful nature of Matta's testimony, and never took any steps to correct Matta's false testimony. At Mr. Gonzalez's trial, Agent Matta falsely denied having misled the court at Pina's removal hearing.

9. On October 29, 2004, the Court granted a motion to extend the seven day deadline for filing new trial motions and, based on the anticipated completion date for the trial transcript, set a motions deadline of January 31, 2005.

10. Counsel have been informed by the court reporter that, due to her heavy workload, the trial transcripts cannot be completed before February 4, 2005. Mr. Gonzalez has timely filed this motion and requested an extension of time, with the Government's consent, to file a supporting memorandum.

11. On November 4, 2004, Judge Nancy Gertner found in *United States v. Green* that recent "studies suggest that death-qualification leads to the exclusion of a disproportionate number of black and female jurors." 2004 WL 2475483 *1, *7 (D. Mass., Nov. 4, 2004) (citing data). The Court found further that "[u]pdated data presented by defendants ... overwhelmingly shows that death-qualified jurors are significantly more conviction-prone than jurors who are not death-qualified." *Id.* at *8. While Mr. Gonzalez will be sentenced, in accordance with the jury's verdict, to life in

3

prison without possibility of release, the new trial grounds listed below include (but are not limited to) challenges to the Court's rulings regarding the capital charges and capital jury selection procedures. There are two related grounds for these challenges, both based on Mr. Gonzalez's right to a fair jury trial: capital juries are not representative of the community; and capital juries are unfairly prone to convict. *See id.* at *7-*9. His trial by this capital jury violated Mr. Gonzalez's rights to a fair jury trial on guilt or innocence.

12. Mr. Gonzalez seeks a new trial for the following reasons:

(a) The Court erred in denying Mr. Gonzalez's motions to dismiss the capital Indictment on grounds that the Federal Death Penalty Act is unconstitutional on its face and as applied in his case. *See* Motion of Defendant Fausto Gonzalez to Dismiss the Death Penalty Notice and Second Superseding Indictment filed on June 17, 2003; Defendants' Joint Motion Challenging the Constitutionality of the Federal Death Penalty Statute filed on June 26, 2003; Ruling on Defendants' Joint Motion Challenging the Constitutionality of the Federal Death Penalty Statute ... and Partial Ruling on Motion of Defendant Fausto Gonzalez to Dismiss the Death Penalty Notice and Second Superceding Indictment ... filed April 30, 2004; Ruling on Motion to Strike ... and Partial Ruling on Motion to Dismiss the Death Penalty Notice and Second Superceding Indictment dated August 17, 2004.

(b) The Court erred in denying Mr. Gonzalez's motion to dismiss the capital Indictment on the ground that it was based in part on perjured testimony of Abner Ortiz. *See* Fausto Gonzalez's Supplemental Motion to Dismiss the Indictment, filed on July 6, 2004; Ruling denying Motion to Dismiss the Second Superceding Indictment as to Fausto Gonzalez filed September 8, 2004.

4

(c) The Court erred in denying Mr. Gonzalez's supplemental motion to dismiss the Indictment on the ground that the Government's filing of the Amended Death Penalty Notice rendered the basis for seeking the death penalty at trial materially different from the basis on which the grand jury had returned the Indictment. *See* Fausto Gonzalez's Supplemental Motion to Dismiss the Indictment filed July 6, 2004; Ruling denying Motion to Dismiss the Second Superceding Indictment as to Fausto Gonzalez filed September 18, 2004.

(d) The selection of a death-qualified jury to decide Mr. Gonzalez's guilt or innocence violated his right to a fair trial because such juries, including the jury selected in this case, are not representative of the community. *See United States v. Green*, 2004 WL 2475483 (D. Mass. Nov. 4, 2004).

(e) The selection of a death-qualified jury to decide Mr. Gonzalez's guilt or innocence violated his right to a fair trial because such juries are, and this jury was, unfairly conviction-prone. *See id.*

(f) The Court erred in denying Mr. Gonzalez's motion for mistrial on the grounds that: at least four venire persons willing to consider the death penalty, but unwilling to commit to imposing it in a case like the one before them, improperly were excused for cause in violation of the Sixth Amendment to the United States Constitution and *Witherspoon v. Illinois,* 391 U.S. 510 (1968); and eight venire persons who demonstrated on their sworn questionnaires that they were not life-qualified improperly survived Mr. Gonzalez's challenges to the conduct of voir dire questioning and to the jurors for cause. As Mr. Gonzalez urged in his motion for mistrial, this jury selection process ensured the seating of an unrepresentative, particularly pro-death jury. *See*

5

Motion for Mistrial for Excusing for Cause Potential Jurors Willing to Consider the Death Penalty but Unwilling to Commit to Imposing it in this Case, filed on September 27, 2004; Order denying Motion for Declaration of Mistrial as to Fausto Gonzalez filed October 1, 2004.

(g)   The Court compounded the jury selection errors during the guilt phase deliberations when, over Mr. Gonzalez's objection, it responded to a note from the jury regarding the meaning of reasonable doubt by reading an instruction that differed from, and had not been included in, the initial jury instructions. The additional instruction, that reasonable doubt is not sympathy, while a correct statement of the law, materially prejudiced Mr. Gonzalez because of the context in which it was given.

(h)   The Government's cooperating witnesses had significant incentives in this case to testify falsely, and did so, in order to protect themselves and receive the benefit of highly favorable cooperation agreements which allowed them to escape prosecution altogether, or to avoid a death sentence and receive a sentence less than the statutory mandatory minimum of life without possibility of release.

(i)    There were critical inconsistencies between the testimony of the cooperating witnesses, as well as internal inconsistencies, *i.e.*, prior inconsistent statements, which casts grave doubt on the veracity of their story. Furthermore, the witnesses offered testimony that made certain alleged facts or observations implausible, and there was substantial eyewitness testimony that contradicted cooperating witness testimony regarding the shooting.

(j)    The Government presented no physical, scientific or forensic evidence that established Mr. Gonzalez's role in the killing of Teddy Casiano.

(k)     The case agent, Christopher Matta, committed perjury at Mr. Gonzalez's trial, as well as at a prior hearing related to this case. Agent Matta's perjury relates to the deal the Government cut in order to secure the testimony of key witness Ollie Berrios. Additionally, Agent Matta's practices during the investigation and development of this case strongly suggest that he attempted to keep inconsistent statements by the cooperating witnesses out of his official reports, ignored inconsistencies in cooperating witnesses' statements, rewarded statements that conformed with the Government's theory of the case, and influenced the testimony of the cooperating witnesses through a variety of techniques.

(l)     The Court erred in permitting the prosecution, over defense objection, to elicit on cross examination of Santiago Feliciano that Mr. Gonzalez bragged about committing murders, thereby implying that he had committed multiple killings. The Court's ruling that Mr. Gonzalez had "opened the door" to this testimony was in error and prejudiced Mr. Gonzalez's right to a fair trial.

(m)     The Court erred in permitting the prosecution, over defense objection on grounds of relevance and prejudice, to introduce a photograph of Mr. Gonzalez from a photo array taken a year after the Casiano murder. The Court ruled that the prosecution could introduce the photograph of Mr. Gonzalez so long as the photograph was introduced by itself and not as part of a photo array.

(n)     The prejudice resulting from the introduction of the photograph was compounded when the Government, while it displayed the photograph by itself, used the order of introduction, (immediately following the introduction of a codefendant's

photograph as part of a photo array), and method of presentation to convey clearly to the jury that Mr. Gonzalez's photograph was taken from an array.

(o) Such other matters as become apparent upon review of the trial transcripts.

(13) The errors during the grand jury proceeding, voir dire process and trial, all compounded by the conviction-proneness of this particular jury, resulted in a miscarriage of justice. The above-mentioned grounds either alone or cumulatively prejudiced the rights of Mr. Gonzalez and it is in the interests of justice to grant a new trial.

WHEREFORE, for the reasons stated and on the basis of the record, including facts and arguments to be presented more fully in a memorandum of law to be submitted after receipt and review of the complete trial transcript, Mr. Gonzalez moves for an order vacating the verdict and ordering a new trial in this case.

_____
Shelley R. Sadin
Federal Bar No. ct05090

        Zeldes, Needle & Cooper, P.C.
        1000 Lafayette Boulevard.
        Suite 500
        Bridgeport, Connecticut 06604
        Tel. no.: (203) 333-9441
        Facsimile no.: (203) 333-1489
        e-mail address: ssadin@znclaw.com

Robert M. Casale
Federal Bar No. ct00156

        250 West Main Street
        Branford, Connecticut 06405
        Tel. no.: (203) 288-6363
        Facsimile no.: (203) 483-9850
        e-mail address:
        attorneycasale@aol.com

Counsel for Defendant Fausto Gonzalez

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via first class United States mail, postage prepaid, on this date, to:

David Ring
Assistant United States Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

S. Dave Vatti
Assistant United States Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

Richard Reeve, Esq.
Michael O. Sheehan, Esq.
Sheehan & Reeve
139 Orange Street
New Haven, CT 06511

Dated at Bridgeport, Connecticut this 28th day of January, 2005.

_____
Shelley R. Sadin

9